**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALEXANDER BUCKLES,**

          **Plaintiff,**

**v.**                                                          **Case No:  6:13-cv-1198-Orl-36TBS**

**FOCUS ON INNOVATION, INC.,**
**FOCUS ON SURETY, LLC and**
**DANIEL BUCKLES,**

          **Defendants.**
_____/

# O R D E R

This cause comes before the Court *sua sponte*.  On March 3, 2014, the Court issued an Order (the "Order to Show Cause") directing Plaintiff Alexander Buckles ("Plaintiff") to show cause as to why Counts I, II, III, IV, V, VI, IX, and X of the Complaint should not be dismissed for lack of supplemental jurisdiction and, alternatively, why the Court should not exercise its discretion in dismissing such Counts.  *See* Doc. 34.  On March 5, 2014, Plaintiff filed a response to the Order to Show Cause.  *See* Doc. 35.  Upon reviewing Plaintiff's response, and for the reasons discussed herein, the Court will dismiss the aforementioned Counts for lack of jurisdiction.

## I.    BACKGROUND[1]

Defendant Daniel Buckles ("Daniel Buckles") is the president of Defendant Focus!...on Innovation, Inc. ("FOI"), a Florida corporation, and a managing member of Defendant Focus!...on Surety, LLC ("FOS"), a Florida limited liability company.  Doc. 1 ¶ 2.  Plaintiff, who is the son of

---

[1] The following background is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss.  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

Daniel Buckles, was employed by FOI from 2007 to May 31, 2013. *Id.* ¶¶ 2, 7. Plaintiff and FOI agreed that Plaintiff would be compensated at 5% of the gross revenue attributable to his work. *Id.* ¶ 10. In addition to his employment with FOI, Plaintiff was retained as an independent contractor with FOS from 2010 to March 28, 2013. *Id.* ¶ 14. Plaintiff and FOS agreed that Plaintiff would be compensated by being provided with a 5% ownership stake in FOS. *Id.* ¶ 17.

According to Plaintiff, neither FOI nor FOS compensated him for the work he performed, thereby breaching their agreements with him. *Id.* ¶¶ 11, 18. With respect to FOI, Plaintiff claims that he completed sales known as the "Gray Surety" and the "Torus Surety" on FOI's behalf, but did not receive full commission on these sales. *Id.* ¶¶ 12, 13. With respect to FOS, Plaintiff asserts that he managed the operations of FOS and permitted FOS to sell bonds using his surety license as the "Agent of Record" on every bond sold, but FOS did not provide him with the 5% ownership stake it promised. *Id.* ¶¶ 19, 20.

Plaintiff also claims that at some point during his employment with FOI, Daniel Buckles accessed Plaintiff's private Google email account ("Gmail account") without permission and reviewed information that was not intended for him. *Id.* ¶ 21.

Finally, Plaintiff alleges that after he stopped working with FOS, his signature was either forged by or at the direction of Daniel Buckles upon surety bonds sold by FOS, or that his signature was removed from documents that he had signed and was thereafter electronically copied onto the bonds. *Id.* ¶¶ 22–23.

On August 8, 2013, Plaintiff filed the Complaint in this Court, asserting the following claims: (1) Count I – breach of contract against FOI; (2) Count II – breach of contract against FOS; (3) Count III – contract implied in fact against FOS; (4) Count IV – contract implied in law/quasi contract/unjust enrichment/quantum meruit against FOS; (5) Count V – promissory

estoppel against FOS; (6) Count VI – fraud in the inducement against FOS; (7) Count VII – violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, against Daniel Buckles; (8) Count VIII – violation of Florida's Security of Communications Act ("Florida SCA"), Fla. Stat. § 934.21 *et seq.*, against Daniel Buckles; (9) Count IX – forgery against Daniel Buckles; and (10) Count X – fraud against Daniel Buckles.  *See* Doc. 1.  The Complaint asserts that this Court has federal question jurisdiction over the SCA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  *Id.* ¶ 5.

On August 27, 2013, Defendants filed a motion to dismiss ("Motion to Dismiss"), asking the Court to dismiss Counts II, III, V, VI, IX, and X because the corresponding claims were barred by the Statute of Frauds, pled with insufficient particularity, or failed to state a claim.  *See* Doc. 12.  In the Motion to Dismiss, Defendants noted that the Court likely did not have supplemental jurisdiction over Plaintiff's state law claims, although Defendants stated that they "[did] not object to the Court exercising jurisdiction over [Plaintiff's] state law claims because [Daniel Buckles] would prefer that the entirety of this action proceed in federal court rather than be partially remanded to state court."  *Id.* at 3 n.2.[2]  Plaintiff filed a response to the Motion to Dismiss, but he did not address the issue of supplemental jurisdiction.  *See* Doc. 14.

On March 3, 2014, the Court issued the Order to Show Cause, noting that the only claim in the Complaint invoking this Court's original jurisdiction was the SCA claim, and that the only state law claim which appeared to be part of the same case or controversy as the SCA claim, thereby invoking the Court's supplemental jurisdiction, was the Florida SCA claim.  Doc. 34 at 3. Accordingly, the Court directed Plaintiff to show cause as to why the remaining state law claims

---

[2] As will soon be evident from this Order, state law claims over which the Court lacks jurisdiction must be *dismissed* rather than remanded, as this is not an action that has been removed from state court.

(the "non-SCA claims") should not be dismissed for lack of supplemental jurisdiction under §

1367(a) and, alternatively, why the Court should not exercise its discretion in dismissing such

claims pursuant to § 1367(c).   *Id.* at 4.   In his response to the Order to Show Cause, Plaintiff

acknowledged that the non-SCA claims were "substantively dissimilar" from the SCA claims, but

explained that he filed all the claims together in federal court for fear that litigating in separate

forums might result in findings of *res judicata* as to some of the claims.  *Id.* at 2–9.  Plaintiff stated

that he felt it was appropriate to allege that the Court had supplemental jurisdiction over the non-

SCA claims because the witnesses for those claims would be similar to those for the SCA claims.

*Id.* at 2–3.   Nevertheless, he declared that he was "essentially neutral" on the issue of whether the

Court should exercise its discretion in dismissing the non-SCA claims, and that he "would not

oppose a dismissal without prejudice and with leave to re-file the non-SCA claims in state court."

*Id.* at 12, 13.

## II.    DISCUSSION

The Court has an obligation to examine the issue of supplemental jurisdiction *sua sponte*

and to dismiss any claims over which it lacks jurisdiction.  *Lucero v. Trosch*, 121 F.3d 591, 598

(11th Cir. 1997).  The supplemental jurisdiction statute provides, in pertinent part:

> (a) Except as provided in subsections (b) and (c) . . ., in any civil action of which
> the district courts have original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that are so related to claims in the
> action within such original jurisdiction that they form part of the same case or
> controversy under Article III of the United States Constitution.
>
> . . .
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a
> claim under subsection (a) if—
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) the claim substantially predominates over the claim or claims
>> over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has
original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons
for declining jurisdiction.

28 U.S.C. § 1367.[3]  "The statute reflects a dichotomy between a federal court's *power* to exercise

supplemental jurisdiction, § 1367(a), and its *discretion* not to exercise such jurisdiction, §

1367(c)." *Lucero*, 121 F.3d at 597.  The constitutional "case or controversy" standard under §

1367(a) confers supplemental jurisdiction "over all state claims which arise out of a common

nucleus of operative fact with a substantial federal claim." *Id.* (citing *United Mine Workers of

America v. Gibbs*, 383 U.S. 715, 724–25 (1966)).  In determining whether a state law claim is part

of the same case or controversy as a federal issue, courts look to "whether the claims arise from

the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines,

Inc.*, 90 F.3d 451, 455 (11th Cir. 1996).  Even where a court has supplemental jurisdiction over

state law claims under § 1367(a), the court may exercise its discretion not to hear such claims

based on one or more of the factors in § 1367(c).  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d

733, 743 (11th Cir. 2006).

Turning to the allegations in the Complaint, the only claim invoking this Court's original

jurisdiction—specifically, federal question jurisdiction—is Plaintiff's federal SCA claim, which

alleges that Daniel Buckles accessed Plaintiff's private Gmail account without permission and

reviewed information that was not intended for him. *See* Doc. 1 ¶¶ 60–68.  These allegations also

provide the foundation for Plaintiff's Florida SCA claim. *Id.* ¶¶ 69–77.  Because Plaintiff's Florida

---

[3] § 1367(b) provides an exception to the grant of supplemental jurisdiction in certain cases where
the jurisdiction-invoking claim is based on diversity of citizenship, but the exception is
inapplicable here because the jurisdiction-invoking SCA claim invokes federal question
jurisdiction. *See* 28 U.S.C. § 1367(b).

SCA claim unquestionably arises out of a common nucleus of operative fact with the jurisdiction-invoking SCA claim, the Court has jurisdiction over the Florida SCA claim. *Lucero*, 121 F.3d at 597.

The same, however, cannot be said of the remaining state law claims. Counts I, II, III, IV, V, and VI are state law claims arising out of Defendants' alleged failure to fulfill promises to compensate Plaintiff for services he performed on their behalf. *Id.* ¶¶ 25–59. Counts IX and X, meanwhile, arise from allegations that Plaintiff's signature was either forged by or at the direction of Daniel Buckles upon surety bonds sold by FOS, or that his signature was removed from documents that he had signed and was thereafter electronically copied onto the bonds. *Id.* ¶¶ 78–91. These non-SCA claims involve completely different facts from the SCA claims. They also involve different occurrences, as Plaintiff admits that the alleged unauthorized Gmail access occurred during a discrete period in March 2013, while the "failure to compensate" claims involve a much longer period of time and the forgery/fraud claims arose *after* Plaintiff had stopped working for FOI and FOS. *See* Doc. 35 at 11–12. Moreover, as Plaintiff concedes, the evidence required to prove the SCA claims will be vastly different from that required for the "failure to compensate" claims and the fraud/forgery claims. *See id.* at 10–11. In a meek attempt to argue in favor of supplemental jurisdiction, Plaintiff asserts that the witnesses for the SCA claims and the non-SCA claims will be substantially the same, because FOI and FOS are small employers owned by Daniel Buckles. *Id.* at 2–3. However, the mere similarity of the witnesses is not enough to convince the Court that the non-SCA claims are part of the same case or controversy as the SCA claim, in light of the other considerations clearly indicating to the contrary. Accordingly, the Court finds that it does not have supplemental jurisdiction over the non-SCA claims, and those claims must be dismissed without prejudice to re-filing in state court.

Even if the Court were to somehow conclude that it has supplemental jurisdiction over the non-SCA claims, it would choose to exercise its discretion in dismissing those claims pursuant to § 1367(c)(2), as it is clear that the non-SCA claims substantially predominate over the federal SCA claim. Indeed, the non-SCA claims make up eight of the ten claims in the Complaint. *See Barcel v. Lele*, No. 8:05-cv-1519, 2005 WL 3468282, at *3 (M.D. Fla. Dec. 19, 2005) (finding that state law claims substantially predominated over federal law claims and declining to exercise supplemental jurisdiction where eight of the thirteen claims were state law claims). Aside from the numerical imbalance, "[a] federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker*, 468 F.3d at 744 (internal citations and quotations omitted). Here, it is clear that the "real body" of the case consists of the state law claims alleging that FOI and FOS failed to compensate Plaintiff pursuant to their agreements and that Daniel Buckles forged or fraudulently used Plaintiff's signature. The vast majority of the factual allegations in the Complaint pertain to these non-SCA claims, and the arguments and evidence in this litigation would likely be directed toward those claims. Because the non-SCA claims predominate over the federal SCA claim, the Court declines to exercise jurisdiction over those claims.[4]

---

[4] After Defendants filed the Motion to Dismiss, but before the Court entered its Order to Show Cause, Plaintiff filed a motion for leave to supplement the Complaint ("Motion to Supplement") by adding state law claims under Florida's Uniform Fraudulent Transfer Act ("UFTA"), Fla. Stat. § 726.101 *et seq*. *See* Doc. 32. The basis for Plaintiff's purported UFTA claims was that Defendants were allegedly dissipating their assets for the purpose of avoiding a future judgment based on the claims in this litigation. *Id.* at 3. In his response to the Court's Order to Show Cause, however, Plaintiff stated that "if this Court were inclined to dismiss the non-SCA claims, Plaintiff would withdraw its pending Motion to Supplement . . . and instead simply file those claims in state court along with the dismissed non-SCA claims." Doc. 35 at 13. Because the Court has concluded that dismissal of the non-SCA claims is appropriate, and based on Plaintiff's abandonment of the issue as well as the Court's apparent lack of supplemental jurisdiction over any UFTA claims, the Court will **DENY** the Motion to Supplement.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Counts I, II, III, IV, V, VI, IX, and X of the Complaint (Doc. 1) are **DISMISSED, without prejudice to re-filing in state court**, for lack of jurisdiction.

2.      Defendants' Motion to Dismiss Count II, Count III, Count V, Count VI, Count IX, and Count X (Doc. 12) is **DENIED as moot**.

3.      Plaintiff's Motion for Leave to Supplement Complaint (Doc. 32) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 6, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

8